IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| Lori A. Barrett,<br>Plaintiff,<br><br>v.<br><br>The Rutland Hospital, Inc. d/b/a<br>Rutland Regional Medical Center,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: |

# COMPLAINT

NOW COMES Lori Barrett, by and through her attorneys, Facey Goss & McPhee P.C., and alleges as follows:

## PARTIES

1. Lori A. Barrett ("Plaintiff") is an individual residing at 9 Hilltop Terrace, Rutland, Vermont 05701.
2. Defendant The Rutland Hospital, Inc. d/b/a Rutland Regional Medical Center ("RRMC") is a corporation with a place of business at 160 Allen Street, Rutland, Vermont 05701.
3. RRMC employs approximately 1,700 employees at its main campus and is an employer covered by the Americans with Disabilities Act ("ADA").
4. RRMC employed Plaintiff as an Ultrasound Technologist in its Diagnostic Imaging Department.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction because this action arises under federal law, including the ADA. 28 U.S.C. § 1331.

FACEY GOSS
& McPHEE P.C.
PO BOX 578
RUTLAND, VT
05702
802 773 3300

6. This Court also has jurisdiction over this action because the ADA incorporates the enforcement procedures and remedies provided for employment-discrimination actions. 42 U.S.C. § 12117.
7. This Court has personal jurisdiction over RRMC because RRMC operates its principal healthcare campus in Vermont and the employment practices alleged herein occurred in Vermont.
8. This Court has supplemental jurisdiction over Plaintiff's Vermont Fair Employment Practices Act ("FEPA") claims under 28 U.S.C. § 1367(a) because those state-law claims are so related to Plaintiff's federal ADA and ADEA claims that they form part of the same case or controversy under Article III of the United States Constitution. The federal and state claims arise from a common nucleus of operative fact – namely, the same employment relationship, the same alleged requests for accommodation and protected activity, and the same adverse employment actions (including administrative leave and termination).
9. This action is not founded solely on diversity jurisdiction under 28 U.S.C. § 1332; accordingly, the limitations set forth in 28 U.S.C. § 1367(b) do not bar supplemental jurisdiction of Plaintiff's FEPA claims.
10. Exercising supplemental jurisdiction over the FEPA claims also promotes judicial economy, convenience, and fairness because the state and federal claims will involve overlapping witnesses, documents, and proof concerning the same employment decisions and course of conduct. Adjudicating the claims together avoids parallel litigation in separate forums and the risk of inconsistent results. The FEPA claims do not predominate

over the federal claims, do not present novel or complex issues of state law, and there is no other compelling reason to decline supplemental jurisdiction under 28 U.S.C. § 1367(c).

11. Venue is proper in this District because RRMC is located in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here. 28 U.S.C. § 1391.

12. Venue is also proper because the alleged unlawful employment practices occurred in Vermont, Plaintiff worked in Vermont, and the relevant employment records are maintained and administered in Vermont. 42 U.S.C. § 2000e-5.

13. Plaintiff exhausted administrative remedies by filing a Charge of Discrimination on April 7, 2026 with the Vermont Attorney General, Civil Rights Division and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex, age, disability, and retaliation for protected activity. Plaintiff's EEOC Charge of Discrimination is attached hereto as Exhibit 1.

14. Plaintiff's EEOC charge identified RRMC as the respondent and alleged, among other things, discrimination concerning Plaintiff's disability-related leave and accommodation requests, administrative leave, termination, and retaliatory conduct.

15. On July 30, 2026, the EEOC issued a closure letter advising that it had completed its review and that the Commission's processing of the charge had been concluded. The EEOC simultaneously issued a Determination and Notice of Rights (Right to Sue Letter). The closure letter and Determination and Notice of Rights are attached hereto as Exhibit 2.

16. Plaintiff received the EEOC's Determination and Notice of Rights on July 30, 2026.

17. This action is filed within ninety days after Plaintiff's receipt of the Notice of Dismissal and Right to Sue.

## FACTUAL ALLEGATIONS

18. Plaintiff worked for RRMC in the Diagnostic Imaging Department as an Ultrasound Technologist at all times relevant to this complaint.
19. Plaintiff has been employed by RRMC in various capacities since at least 1998. *See* Ex. 1.
20. Plaintiff was initially hired as an ultrasound technologist by RRMC on or about June 29, 2015.
21. Plaintiff reported to Tammi Birdsey, Manager of Diagnostic Imaging, and Michele Weeks, Lead Sonographer.
22. Plaintiff resigned from her position on or around November 20, 2022.
23. Plaintiff then applied for per diem ultrasound work in January 2023.
24. Tammi Birdsey advised Plaintiff that Human Resources was doing away with per diem positions.
25. After further inquiry with Brian Kerns (then head of Human Resources), Plaintiff was told per diem positions were not eliminated, but that they were not offered to her since she had fully resigned her position.
26. Plaintiff then accepted a per diem position as a switchboard operator at a rate of pay of $19.90 per hour.
27. Plaintiff later transitioned back to full-time ultrasound work with RRMC on or about March 10, 2023 with a rate of pay of $44.13 per hour.
28. On or about November 27, 2023, Plaintiff suffered a workplace injury resulting in damage to her spine, causing her pain, and leading to permanent nerve damage on the right side of her body.

29. Plaintiff subsequently filed a worker's compensation claim and went out on leave.[1]
30. Plaintiff had a documented medical condition and provided RRMC with medical documentation regarding her need for medical leave and reasonable accommodations.
31. Plaintiff was released to work with appropriate accommodations and restrictions on or about March 18, 2024.
32. Plaintiff's restrictions included not being able to lift or carry more than five pounds, no bending, twisting, pushing/pulling, and no strenuous activity.
33. These restrictions affected Plaintiff's ability to move and position patients and larger pieces of equipment on her own. Plaintiff needed reasonable accommodations and assistance in order to do this.
34. RRMC knew of Plaintiff's medical leave, work restrictions, and accommodation requests, including through documented leave approvals, fitness-for-duty documentation, and light-duty periods.
35. While Plaintiff was released back to full-time work, her physical condition continued to deteriorate and she suffered from increasing numbness and lack of sensation on the right side of her body.
36. On April 18, 2024, Plaintiff underwent a cervical spinal stenosis surgery to prevent her condition from deteriorating further.
37. RRMC knew about Plaintiff's surgery, need for leave to undergo the surgery and for recovery, and of the accommodations and work restrictions Plaintiff would need when she returned to work.

---

[1] Any litigation pertaining to a worker's compensation claim has already been dealt with. To the extent that the injury is discussed here, it is only for purposes of illustrating Plaintiff's medical condition as it pertains to the claims presented in this complaint.

38. Plaintiff was restricted in how much weight she could lift post-surgery.
39. Plaintiff requested reasonable accommodations, including work restrictions and training related to examinations she was asked to perform.
40. During her leave, Plaintiff was threatened with the discontinuation of her benefits.
41. Plaintiff was also threatened with the termination of her position if she did not return to work full-time without restrictions by June 1, 2024.
42. Plaintiff agreed to return to work full-time without restrictions on or about May 31, 2024.
43. Plaintiff alleges that, after returning from injury-related leave and requesting accommodations, RRMC subjected her to increased scrutiny and negative treatment by her supervisors.
44. Plaintiff never recovered full sensation on the right side of her body.
45. Because Plaintiff lacked sensation in her right hand and arm, certain exams she was asked to perform became very difficult, if not impossible, because she could not tell how much pressure she was applying or locate positions and abnormalities based on feel the way she previously had.
46. Plaintiff worked alone on the night shift, with no assistance from any other ultrasound technicians or regular support staff, until September 2025. RRMC knew of Plaintiff's need for accommodations and assistance to perform certain exams and did not provide them.
47. Plaintiff requested a change to day shift in April, 2025 because of her ongoing difficulty in performing certain scans without assistance during the night shift. RRMC did not grant this request until on or about September 8, 2025 when Plaintiff was moved to the first day shift.
48. RRMC was aware of and kept up to date on Plaintiff's leave and restrictions, including documented approvals and light-duty periods.

49. Plaintiff alleges that RRMC required her to perform scans that she believed she could not safely perform because of her injury-related limitations and her lack of training in particular competencies.
50. Plaintiff alleges that she repeatedly sought training and assistance concerning examinations for which she required additional competency training, but RRMC did not provide adequate assistance before escalating its scrutiny of her work.
51. During the time period between March 2023 and December 2025, Plaintiff raised concerns regarding workplace communication, scheduling, and management practices, including insufficient communication regarding work assignments and protocol changes; inconsistent application of time-off and shift-change practices; and disparate treatment regarding time off and access to training or advancement.
52. Plaintiff engaged in protected activity, including requesting reasonable accommodations, reporting concerns about workplace practices, and participating in union organizing activity.
53. Plaintiff states that Plaintiff's supervisor, Tammi Birdsey, was aware of Plaintiff's participation and signature collection in support of union organization.
54. In the course of her work, Plaintiff documented legitimate, patient-specific limitations affecting imaging quality and feasibility – including limitations based on patient condition, pain, obesity, and obstructed views.
55. Plaintiff met with Tammi Birdsey at least weekly during her transition to day shift.
56. Plaintiff's performance history included evaluations reflecting that she met expectations, including evaluations addressing her knowledge, skills, and abilities as defined by the position description.

57. Plaintiff routinely sought feedback regarding whether radiologists who relied on her scans were satisfied, and she was told repeatedly by Tammi Birdsey that there was nothing further needed and the radiologists were satisfied.

58. Plaintiff was informed in October 2025 that Dr. Mitchell wanted more detail in her scans. When Plaintiff asked Dr. Mitchell what additional detail he wanted, he replied, "I don't know," leaving Plaintiff without actionable direction.

59. RRMC did not place Plaintiff on a documented performance-improvement plan or provide documented progressive discipline before placing her on administrative leave and terminating her employment.

60. When Plaintiff switched to working the day shift in September of 2025, she did start to receive training in PVR scans, which she had not previously needed to perform. However, Plaintiff was unable to feel the compression necessary to perform this scan due to her disability.

61. On or about October 22, 2025, Plaintiff requested that she not be required to do any further PVR scans. This request was granted.

62. Plaintiff's requests to not perform a small handful of other types of scans for the same reason, inability to feel pressure when that was a critical part of properly performing the scan, were ignored.

63. Plaintiff was still able to perform all the essential functions of her job, which did not require competency in every type of scan.

64. On or about November 4, 2025, Plaintiff requested a return to night shift due to the lack of assistance and training she was receiving in order to become proficient in competencies that were only done during the day shift. A return to night shift would allow Plaintiff to

continue to perform all essential functions of her job while not needing training in additional competencies. RRMC denied Plaintiff's request.

65. RRMC stated that it denied Plaintiff's requested return to the night shift because radiologists were unwilling to have her work independently based on RRMC's asserted performance concerns.

66. On or about November 18, 2025, Plaintiff was collecting signatures in support of union formation at some of RRMC's satellite buildings.

67. After collecting signatures, Plaintiff returned to the main building to converse with another employee who was assisting in union formation.

68. Within a few hours after conversing with that employee, Plaintiff was placed on administrative leave.

69. Plaintiff had no prior disciplinary record.

70. RRMC asserts that it placed Plaintiff on administrative leave on November 18, 2025, pending review of clinical documentation concerning her performance.

71. RRMC later asserted that radiologists had lost confidence in the reliability of studies performed by Plaintiff.

72. Plaintiff was terminated from her position on December 2, 2025.

73. RRMC's stated reason for terminating Plaintiff was that the radiologists no longer had confidence in the reliability of Plaintiff's studies and that this affected interpretation quality and patient care.

74. Plaintiff alleges that RRMC's asserted performance rationale was a pretext for discrimination and retaliation because RRMC knew of her disability-related limitations and requests for accommodations, did not provide appropriate accommodations and training,

escalated scrutiny after protected activity, and departed from ordinary progressive-discipline practices before terminating her employment.

## CAUSES OF ACTION

### COUNT I
### Disability Discrimination Under the Americans with Disabilities Act

75. Plaintiff incorporates by reference Paragraphs 1–74 as if fully set forth herein.

76. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

77. RRMC knew that Plaintiff had a disability and knew of her disability-related limitations, medical leave, work restrictions, and accommodation requests.

78. Plaintiff was qualified to perform the essential functions of her Ultrasound Technologist position with reasonable accommodation.

79. RRMC discriminated against Plaintiff on the basis of disability by subjecting her to increased scrutiny and negative treatment, denying or delaying accommodations, denying her requested return to the night shift, placing her on administrative leave, and terminating her employment.

80. RRMC's conduct adversely affected Plaintiff's employment opportunities, status, and terms and conditions of employment because of her disability.

81. The ADA prohibits discrimination against a qualified individual on the basis of disability in discharge, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112.

### COUNT II
### Failure to Provide Reasonable Accommodation Under the Americans with Disabilities Act

82. Plaintiff incorporates by reference Paragraphs 1-81 as if fully set forth herein.

83. Plaintiff informed RRMC of her disability-related limitations and her need for leave, work restrictions, accommodation, and training.

84. Plaintiff requested accommodations that would have allowed her to perform the essential functions of her position, including appropriate work restrictions, training, and reassignment to an available shift compatible with her limitations.

85. RRMC failed to provide effective reasonable accommodations by requiring Plaintiff to perform scans despite her stated injury-related limitations and lack of competency training, by failing to provide adequate requested training, and by denying her requested return to the night shift.

86. RRMC failed to engage in a good-faith interactive process to identify and implement an effective reasonable accommodation for Plaintiff's known limitations.

87. RRMC's failure to accommodate Plaintiff contributed to the performance concerns RRMC later relied upon in placing Plaintiff on leave and terminating her employment.

88. The ADA prohibits an employer from failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability unless the employer demonstrates undue hardship. 42 U.S.C. § 12112.

## COUNT III
## Retaliation Under the Americans with Disabilities Act

89. Plaintiff incorporates by reference Paragraphs 1–88 as if fully set forth herein.

90. Plaintiff engaged in protected activity under the ADA by requesting accommodations and leave and by communicating with RRMC concerning her disability-related limitations and workplace treatment.

91. RRMC knew of Plaintiff's protected activity.

92. After Plaintiff engaged in protected activity, RRMC subjected her to materially adverse actions, including heightened scrutiny and negative treatment, benefit threats, denied or delayed requested accommodations, placed her on administrative leave, and terminated her employment.

93. The timing and sequence of RRMC's actions, including its escalation of alleged performance concerns after Plaintiff's return from injury-related leave and requests for accommodation, support an inference that RRMC retaliated against Plaintiff for engaging in protected activity.

94. RRMC's stated performance-based justification for its actions was not the true reason for its adverse treatment of Plaintiff, but was instead a pretext for retaliation.

## COUNT IV
## Age Discrimination Under the Age Discrimination in Employment Act

95. Plaintiff incorporates by reference Paragraphs 1–94 as if fully set forth herein.

96. Plaintiff is within the protected age group under the Age Discrimination in Employment Act ("ADEA") (age forty (40) and older).

97. RRMC is an employer covered by the ADEA.

98. Plaintiff was qualified for her position.

99. RRMC terminated Plaintiff's employment and otherwise took adverse actions against her.

100. Plaintiff alleges age was a motivating factor in RRMC's decision-making and that RRMC's stated reasons were pretextual.

101. As a direct and proximate result, Plaintiff suffered damages including loss of wages and benefits, emotional distress, and other compensable losses.

COUNT V
Age Discrimination Under the Vermont Fair Employment Practices Act

102. Plaintiff incorporates by reference Paragraphs 1–101 as if fully set forth herein.

103. Plaintiff was over the age of forty (40) at all relevant times.

104. Plaintiff was qualified for her position.

105. RRMC subjected Plaintiff to adverse employment actions including administrative leave and termination.

106. Plaintiff alleges RRMC's actions were motivated, at least in part, by Plaintiff's age and that RRMC's stated reasons were pretextual.

107. As a direct and proximate result, Plaintiff suffered damages including loss of wages and benefits, emotional distress, and other compensable losses.

COUNT VI
Disability Discrimination Under Vermont Fair Employment Practices Act

108. Plaintiff incorporates by reference Paragraphs 1–107 as if fully set forth herein.

109. Plaintiff was regarded as having a disability, including a documented medical condition and work-related injury resulting in restrictions and the need for leave and accommodations as defined in FEPA.

110. Plaintiff was qualified to perform the essential functions of her job, with or without reasonable accommodation.

111. RRMC subjected Plaintiff to adverse employment actions, including increased scrutiny, denial or delay of reasonable accommodations, administrative leave, and termination.

112. Plaintiff alleges RRMC took these actions because of Plaintiff's disability and/or because of disability-related limitations and protected leave.

113. As a direct and proximate result, Plaintiff suffered damages including loss of wages and benefits, emotional distress, and other compensable losses.

COUNT VII
Failure to Accommodate & Failure to Engage in the Interactive Process Under the Vermont Fair Employment Practices Act

114. Plaintiff incorporates by reference Paragraphs 1–113 as if fully set forth herein.

115. Plaintiff requested reasonable accommodations and leave and provided appropriate medical documentation.

116. Plaintiff alleges RRMC denied or delayed reasonable accommodations, including by requiring Plaintiff to perform work outside her training and/or inconsistent with her restrictions, and by refusing or improperly denying a shift placement request made in connection with accommodation needs.

117. Plaintiff alleges RRMC failed to engage in a timely, good-faith interactive process to identify and implement effective reasonable accommodations.

118. As a direct and proximate result, Plaintiff suffered damages including loss of wages and benefits, emotional distress, and other compensable losses.

COUNT VIII
Retaliation Under Vermont Fair Employment Practices Act

119. Plaintiff incorporates by reference Paragraphs 1–118 as if fully set forth herein.

120. Plaintiff engaged in protected activity, including requesting accommodations and leave, raising workplace concerns, and participating in union organizing activity.

121. RRMC knew of Plaintiff's protected activity.

122. RRMC subjected Plaintiff to adverse employment actions, including increased scrutiny and negative treatment, denial or delay of accommodations, benefit threats during leave, administrative leave, and termination of her employment.

123. Plaintiff alleges RRMC's adverse actions were causally connected to Plaintiff's protected activity.

124. As a direct and proximate result, Plaintiff suffered damages including loss of wages and benefits, emotional distress, and other compensable losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against RRMC and award:

A. A declaration that RRMC's acts and practices complained of herein were unlawful in violation of the ADA, ADEA, and FEPA;

B. An injunction prohibiting RRMC from engaging in further disability discrimination or retaliation;

C. Back pay, including lost wages, salary, benefits, and other equitable make-whole relief;

D. Front pay in lieu of reinstatement in an amount to be determined;

E. Compensatory damages, including damages for emotional distress, pain and suffering, and other nonpecuniary losses in an amount to be determined at trial;

F. Punitive damages, where permitted by law and supported by the evidence;

G. Prejudgment and post-judgment interest as allowed by law;

H. Reasonable attorneys' fees and costs, as permitted by law; and

I. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED at Rutland, Vermont on October 28, 2026.

FACEY GOSS & MCPHEE P.C.

By: ______________________________

Shannon A. Bertrand, Esq.
71 Allen Street, Suite 401
Rutland, VT 05701
(802) 665-2680
bertrand@fgmvt.com